**Mary BUTLER, previously known as Mary Hill, Plaintiff and Respondent,**

v.

**Hank L. LEE and Janet W. Lee, Defendants and Appellants.**

**No. 880046–CA.**

Court of Appeals of Utah.

May 5, 1989.

Pete N. Vlahos, Ogden, for plaintiff and respondent.

William J. Critchlow, III, Ogden, and Charles T. Critchlow, for defendants and appellants.

Before GARFF, DAVIDSON and GREENWOOD, JJ.

## OPINION

GARFF, Judge:

Appellants Hank and Janet Lee appeal a declaratory judgment ordering an easement by implication or necessity on their property in favor of respondent Mary Butler, previously known as Mary Hill. Appellants seek reversal and vacation of the judgment. We affirm.

Appellants leased a restaurant and parking lot from Jack Hill, who also owned an adjacent parcel abutting the parking lot. After appellants leased the restaurant, Hill built a storage facility on the adjacent property, about six feet from the property line.

This storage facility measures 60 by 144 feet and has twelve storage bays on each side with ten foot high doors for access. A non-weight-bearing wooden partition runs down the center of the storage facility, separating the northwest and southeast units. The partition in storage unit 1 has been removed to make one sixty-by-fourteen foot unit. The southeast side of the storage facility fronts on Highway 91, while the northwest side, with twelve bays facing the restaurant property, is approximately six feet from the property line. Because the facility is designed and used primarily for boat and RV storage, which requires substantial turning and maneuvering room, this six foot strip does not provide adequate access for the northwest storage units. Consequently, storage facility clients continually use a portion of the restaurant's rear parking lot, approximately twenty-four feet in width and the length of the storage facility, to gain access to the northwest units.

Mr. Hill testified that he discussed with appellants the construction of the storage units and the use of part of the parking lot for access several times prior to building the units. Further, Hill testified that several times during the term of the lease appellants asked to purchase the restaurant property from him, but he refused, explaining that he was unwilling to sell it because he needed to have access to the storage units. On the other hand, appellant Hank Lee testified that Hill never discussed access to the storage units with him prior to the sale. However, he contradicted this testimony on cross-examination. It is undisputed that the storage units were rented and used on a continuous basis all during this time and that appellants were aware of and did not object to this use of the parking lot during the time they leased the restaurant property.

In 1981, respondent was divorced from Hill. In the settlement, she was awarded the storage unit building and the property upon which it was built, while he retained the restaurant and the property upon which it was built. Hill represented to respondent that she would always have access to the storage units over the restaurant parking lot.

On September 1, 1981, appellants purchased the restaurant from Hill. Hill alleges that he sold the property with the oral stipulation that access to the storage units over the restaurant parking lot would

continue. However, the sales documents prepared by Hill's agent did not contain any reservation of an easement upon the property nor did they mention the $30,000 cash payment Hill required appellant to make as a condition precedent to the sale. Instead, the documents contained a clause negating all other representations, covenants, and agreements between the parties.

During the summer of 1985, appellants developed plans for the construction of a fence, storage units, and shops upon the rear parking lot, and so informed respondent. The proposed development would prevent vehicular access to the northwest storage units, resulting in a $45 per month per unit loss to respondent. Respondent continued to operate the storage units which were fully rented at this time.

On October 14, 1985, respondent filed an action for a declaratory judgment against appellants, claiming an easement over the rear parking lot for ingress and egress to the storage facility. The trial court rendered a declaratory judgment in her favor, granting an easement by implication or necessity. The court specifically found that if respondent was not allowed to use appellants' property for access to the twelve northwest storage units, there would be no reasonable access to them unless the wooden center structure separating the units was removed, which was impractical and economically unfeasible.

Appellants moved to vacate the judgment, denying the necessity of an easement. The trial court, after hearing, denied the motion. Appellants then brought this appeal.

On appeal, the parties raise the following issues: (1) May an easement by implication be inferred from a written sales agreement that expressly negates any other agreements between the parties? (2) May an easement by implication be found where there is alternative access to the land and improvements, but the alternative access is costly, inadequate, inconvenient or difficult? (3) Did the trial court err in refusing to admit testimony concerning appellants' economic loss if the easement were granted upon their property? (4) Did the parties intend a permanent easement or a revocable license?

■ On appeal from a declaratory judgment, we will only set aside the trial court's findings under the clearly erroneous standard set forth in Utah Rules of Civil Procedure 52(d) "if the findings ... are against the clear weight of the evidence, or if the appellate court otherwise reaches a definite and firm conviction that a mistake has been made." *State v. Walker*, 743 P.2d 191, 193 (Utah 1987). To affirm the trial court's judgment, we must, therefore, determine whether the clear weight of the evidence supports each of the elements necessary to constitute an easement by implication: (1) that unity of title was followed by severance; (2) that the servitude was apparent, obvious, and visible at the time of severance; (3) that the easement was reasonably necessary to the enjoyment of the dominant estate; and (4) that the use of the easement was continuous rather than sporadic. *Ovard v. Cannon*, 600 P.2d 1246, 1247 (Utah 1979); *Chournos v. Alkema*, 27 Utah 2d 244, 494 P.2d 950, 952 (1972); *Southland Corp. v. Potter*, 760 P.2d 320, 323 (Utah Ct.App.1988).

■ The record clearly shows that unity of title was followed by severance, and that use of the easement was continuous rather than sporadic. Respondent and Hill, while married, jointly owned the property comprising both parcels. The parcels were severed pursuant to the divorce settlement when respondent acquired the storage unit parcel and Hill retained the restaurant parcel. Subsequently, Hill sold the restaurant parcel to appellant. Since 1974, prior to the divorce settlement, the parking lot was continuously used on a daily basis by storage unit patrons for access to their units. *Cf. Southland Corp.*, 760 P.2d at 323.

■ The parties disagree, however, as to whether the servitude was apparent at the time of the severance. Although controverted, the record contains evidence that, prior to construction of the storage units, Hill explained to appellant several times that part of the restaurant parking lot would have to be used for access to the

units, and that, on several occasions, Hill had refused to sell the restaurant parcel to appellant because he needed the parking area for access to the units. It is uncontroverted that storage unit patrons openly used the parking lot for access and that appellant was aware of and acquiesced to this use. However, appellant argues that an easement by implication should not be inferred, despite these circumstances, when the written sales agreement between the parties expressly negates any other agreements between the parties.

We respond by citing *Adamson v. Brockbank*, 112 Utah 52, 185 P.2d 264, 270–72 (1947):

> In dealing with creation of easements by implication, the Restatement of the Law, Section 476, states on page 2978: "An easement created by implication arises as an inference of the intention of the parties to a conveyance of land. The inference is drawn from the circumstances under which the conveyance was made rather than from the language of the conveyance. To draw an inference of intention from such circumstances, they must be or must be assumed to be within the knowledge of the parties...."
>
> ....
>
> ... "The presumption of law is that the parties contracted with a view to the condition of the property as it actually was at the time of the transaction, and after sale neither one had a right, without the consent of the other, to change that condition, which openly and visibly existed, to the detriment of the other. The deed conveyed the land with all the benefits and burdens appendant or quasi appendant thereto, and the vendee could neither shake off the burdens nor could the vendor take away the benefits that were open and visible at the time of sale."
>
> ....
>
> "An appurtenance implied upon a severance of title is referred to the intent of

the grantor, and such intent is gathered from conditions existing at the time of the severance of title and implied from such circumstances; and, in general terms, the rule may be stated that when the owner of a tract of land has arranged and adapted the various parts so that one derives a benefit and advantage from the other of a continuous and obvious character, and he sells one of the parts without making mention of the incidental advantage or burdens of one in respect to the other, there is implied an understanding and agreement that such advantages and burdens continue as before the separation of title."

*Id.* (quoting *Fayter v. North*, 30 Utah 156, 83 P. 742, 746–47 (1906) and *Morris v. Blunt*, 49 Utah 243, 161 P. 1127, 1132 (1916)).

Under *Adamson*, an implied easement is drawn from the circumstances known to the parties under which the conveyance was made, rather than from the language of the conveyance. Despite Hill's disavowal in the sales contract of any other agreements, including the disputed easement, the attendant circumstances clearly indicate that the parties intended to pass title subject to respondent's continuing right of access to the storage units through appellant's parking lot.[1] Further, Hill had represented to respondent at the time of the divorce that she would always have access to the storage units through the parking lot. Therefore, even if he had intended to eliminate the easement when he conveyed the restaurant parcel to appellant, Hill had no right to contract away respondent's existing easement because, at the time of the divorce, he took title to the restaurant parcel subject to the easement. The record thus contains sufficient evidence for the trial court to reasonably find that appellant was fully aware of all the circumstances surrounding the use of both pieces of property and of Hill's intent when appellant purchased the property.

---

1. "Whether an easement arises by implication on a conveyance of real estate depends on the intent of the parties, which must clearly appear in order to sustain an easement by implication. In order to determine the intent, the court will take into consideration the circumstances attending the transaction, the particular situation of the parties, and the state of the thing granted." *Orr v. Kirk*, 224 P.2d 71, 73, 100 Cal. App.2d 678 (1950).

**1154**

The parties also disagree as to whether the third element necessary to find an easement by implication exists, namely, that the easement was reasonably necessary to the enjoyment of the dominant estate. The trial court found that if access were not permitted, the northwest storage units would become useless because they would only be accessible by foot. The court further found that restructuring the units by removing the wooden center partition would be impractical and economically unfeasible. Appellant argues that an easement by implication should not be inferred where there is alternative access to the land and improvements even if the alternative access is costly, inadequate, inconvenient or difficult, but may only be inferred where there is absolute necessity; i.e. "only where one cannot get to his property through his own land." *Orr v. Kirk*, 224 P.2d 71, 75, 100 Cal.App.2d 678 (1950).

In Utah, there must be a reasonable necessity to imply an easement. *Morris v. Blunt*, 161 P. at 1132. Although some jurisdictions require absolute necessity, *id.; Freightways Terminal Co. v. Industrial and Commercial Constr., Inc.*, 381 P.2d 977, 984 (Alaska 1963); the Utah Supreme Court has determined that "the requirement of a reasonable necessity seems to be supported by the weight of authority and by reason," and has, therefore, adopted this position. *Morris v. Blunt*, 161 P. at 1132; *see also Freightways Terminal Co.*, 381 P.2d at 984; *Adamson*, 185 P.2d at 270. Appellant's contention that absolute necessity is required in Utah to imply an easement is thus mistaken.

As to whether there is a reasonable necessity in the present case to imply an easement, respondent testified that even if it were possible to remove the dividing wall between the units so that access could be achieved from the front of the property, a sixty-foot-long storage unit had no practical use and was virtually unmarketable. All parties testified that current use of the storage units required access by the easement. We find, therefore, that there was sufficient evidence in the record to sustain the trial court's finding that a reasonable

necessity sufficient to imply an easement existed.

Because these issues are dispositive of this appeal, we decline to address appellants' remaining issues.

Affirmed.

DAVIDSON and GREENWOOD, JJ., concur.